IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Judge John L. Kane

Civil Action No. **07-cv-01121**

**GENNIE SHIFTER, LLC., a Colorado limited liability company**,

    Plaintiff,

v.

**LOKAR, INC., a Tennessee corporation**,

    Defendant.

---

## MEMORANDUM OPINION AND ORDER

---

**Kane, J.**

    Plaintiff Gennie Shifter, LLC, is a Colorado limited liability company engaged in the manufacture of after market automotive performance parts and accessories.  It brings suit in this court seeking a declaratory judgment that it has (1) neither infringed nor diluted Defendant Lokar's trademarks; (2) not committed common law unfair competition, fraud, and/or misrepresentation in its advertisements; (3) not made any false or misleading misrepresentations of fact misrepresenting the nature, characteristics, or qualities of Lokar's mark or products; and (4) not infringed Lokar's copyrights.  Gennie Shifter's Complaint for Declaratory Relief against Lokar, Inc., Doc. 1.  Defendant Lokar, Inc., a Tennessee corporation, is also a manufacturer of after market automotive performance parts and accessories.  It denies Gennie Shifter's claims and has filed a counterclaim asserting two counts of copyright infringement, federal and common law trademark infringement, federal and common law unfair competition, federal and

1

common law false advertising, federal and common law trademark dilution, and false designation of origin/trade dress infringement.  Lokar's Amended Answer to Complaint for Declaratory Relief and Counterclaim against Gennie Shifter, LLC, Doc. 11.

This case is now before me on Gennie Shifter's motion for summary judgment on all of Lokar's counterclaims (Doc. 68), and Lokar's motion for summary judgment on Gennie Shifter's First (Declaratory Judgment of Trademark Non-Infringement), Second (Declaration of No Common Law Unfair Competition), and Fourth (Declaration of Copyright Non-Infringement) Claims for Declaratory Relief as well as on Counts I (Copyright Infringement), II (Copyright Infringement), III (Federal and Common Law Trademark Infringement), and IV (Federal and Common Law Unfair Competition) of its counter-claim (Docs. 57 and 64).   Also outstanding is Lokar's Motion to Join Parties and to Amend Pleading and/or Amend the Stipulated Scheduling and Discovery Order (Doc. 63).  Though I do not address this motion in this order, I will reserve judgment on those claims which could be impacted by this motion.  For the reasons stated below, Gennie Shifter's summary judgment motion (Doc. 68) is granted in part and denied in part, Lokar's Motion for Summary Judgment of Trademark Infringement and Unfair Competition (Doc. 64) is denied, and Lokar's Motion for Summary Judgment of Copyright Infringement (Doc. 57) is denied in part.

## JURISDICTION AND VENUE

This case is brought under 15 U.S.C. §§ 1051 et seq., the federal statutory provisions providing protections and remedies to the holders of trademarks; 17 U.S.C. § 101 et seq., the federal statutory provisions providing protections and remedies to the holders of copyrights; and the Declaratory Judgment Act, 28 U.S.C. § 2201 *et seq.*.  Accordingly, subject matter

jurisdiction is proper under both 28 U.S.C. §§ 1331 and 1338.  Lokar is subject to the personal

jurisdiction of this Court because:  (1) a substantial part of the events giving rise to this litigation

occurred in the State of Colorado; and  (2) Lokar has established sufficient minimum contacts

with this jurisdiction through past and present business transactions in the State of Colorado.[1]

*See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 455-56 (10th Cir. 1996) (citing

*Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)).

Additionally, venue is proper in this district under 28 U.S.C. § 1391 because a substantial

portion of the relevant transactions and events occurred here, and Lokar has purposefully

directed its activities here.

## FACTS

Gennie Shifter and Lokar are competitors in the manufacture and marketing of after

market automotive performance accessories.  Most relevant to the instant controversy, both

Gennie Shifter and Lokar manufacture and market transmission shifters and transmission shifter

accessories.  In 2007, Gennie Shifter began manufacturing and marketing its Lo-Dapt Shifter

Knob Adapter ("Lo-Dapt"), a product which allows customers to attach Gennie Shifter specialty

shifter knobs to push-button type shifters manufactured by other companies, such as Lokar.

There are numerous similarities between the Lo-Dapt and a Shifter Knob Adapter manufactured

by Lokar.

Though Lokar holds no design patent for its Shifter Knob Adapter, it took issue with a

---

[1] Lokar's contacts with this jurisdiction include selling or attempting to sell its goods to customers residing in Colorado, providing internet users in Colorado access to its interactive website at which they can obtain information to order Lokar's products, and contracting, or attempting to contract, with Colorado residents for the sale of its products through Lokar distributors based in Colorado

variety of matters surrounding Gennie Shifter's marketing and manufacture of the Lo-Dapt. Specifically, Lokar objected to Gennie Shifter's use of its trademarks in advertising the Lo-Dapt, extensive similarities between both the installation instructions included with the products and advertising materials used to promote the products, and Gennie Shifter's claim that the Lo-Dapt wasn't plagued by "annoying rattles." Accordingly, on May 16, 2007, Lokar sent Gennie Shifter a cease and desist letter, alleging that Gennie Shifter had violated its federally registered stylized LOKAR trademark, included misrepresenting and/or fraudulent statements in its advertising materials, and violated copyrights held by Lokar for the contents of its advertising materials and instruction sheets accompanying its products. *See* Letter from Paul E. Hodges, Pitts and Brittian, P.C., to Todd Gold, CEO, Gennie Shifter, Gennie Shifter's Exhibit 1, Doc. 1-2.

Undeterred by Lokar's threats, Gennie Shifter continued marketing the Lo-Dapt and began expanding its family of "Lo" branded products to include the Lo-Stik, Lo-Stik Commander Series, and Lo-Mount, in addition to the Lo-Line Brake which it had been manufacturing since the early 1980s.[2] It also used "Lo" in advertisements, referring to the "Lo-Craze" and stating that "Lo- is the new Hi."[3] Finally, it filed suit in this court seeking declaratory judgment, giving rise to Lokar's counter-claim and the present action.

---

[2] The parties hotly contest the earliest date at which Gennie Shifter began marketing its Lo-Line Brake, and they devote extensive briefing and argument to this topic. As my analysis and decision is not based upon which party was the senior user of the "Lo" syllable, the exact date at which Gennie Shifter began marketing this product is irrelevant for purposes of these summary judgment claims.

[3] Lokar asserts that these statements take on added significance, as the name of Lokar's president is Rick Craze, and Lokar had a product line referred to as "Hi Tech."

# MOTIONS FOR SUMMARY JUDGMENT

## *Legal Standard*

Summary judgment is appropriate only if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c)(2); *Adamson v. Multi. Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008). A fact is material if it could affect the outcome of the suit under governing law; a dispute of fact is genuine if a rational jury could find for the nonmoving party on the evidence presented. *Id*.

On a motion for summary judgment, the moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.* at 1145. Where the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy this burden by demonstrating a lack of evidence for an essential element of the nonmovant's claim. *Id.* In deciding whether the moving party has carried its burden, I do not weigh the evidence and instead must view it and draw all reasonable inferences from it in the light most favorable to the nonmoving party. *Id.* Neither unsupported conclusory allegations nor mere scintilla of evidence, however, are sufficient to create a genuine dispute of material fact on summary judgment. *See Mackenzie v. City & County of Denver*, 414 F.3d 1266, 1273 (10th Cir. 2005). When a moving party has carried its burden under Rule 56(c), more than "some metaphysical doubt" as to the material facts must be demonstrated by the nonmovant to survive summary judgment. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When parties file cross-motions for summary judgment and there is no non-moving party, the Court may assume that it need not consider any evidence other than materials filed by the parties. *Atlantic Richfield Co. v. Farm Credit Bank*, 226 F.3d 1138, 1148 (10th Cir. 2000)

5

(citing *James Barlow Family Ltd. P'ship v. David M. Munson, Inc.*, 132 F.3d 1316, 1319 (10th Cir. 1997)).  Summary judgment is, however, nevertheless inappropriate where disputes remain as to material facts.  *Id.*

## Discussion

## I.  Copyright Infringement

*(Lokar's Counts I and II, Gennie Shifter's Fourth Claim for Declaratory Relief)*

Both Lokar and Gennie Shifter have moved for summary judgment on Lokar's copyright infringement claims, and Lokar has moved for summary judgment on Gennie Shifter's claim for declaratory judgment that it has not infringed Lokar's copyrights.[4]  In order to prevail on its claim of copyright infringement, Lokar must establish that (1) it owns valid copyrights in its instructions and advertising materials, and (2) Gennie Shifter copied[5] constituent elements of the work that are sufficiently original to warrant copyright protection.  *R.W. Beck, Inc. v. E3 Consulting, LLC*, 577 F.3d 1133, 1142 (10th Cir. 2009) (citing *Country Kids 'N City Slicks, Inc. v. Sheen*, 77 F.3d 1280, 1284 (10th Cir. 1996)).  There are two distinct inquiries inherent in proving the second element of copyright infringement.  *Id.*  First as a factual matter, Lokar must prove that Gennie Shifter copied its materials.  *Id.*  Copying may be proved either by direct evidence or by establishing that Gennie Shifter had access to the materials and that there exists

---

[4]  My analysis focuses on the parties' competing motions for summary judgment on Lokar's counterclaims, as resolution of these claims will necessarily resolve Lokar's motion for summary judgment on Gennie Shifter's claim for declaratory judgment of copyright non-infringement.

[5]  Courts and commentators regularly use "Copying" as shorthand in reference to the infringement of a copyright holder's exclusive rights under a copyright.  *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284, n. 2 (citing *Gates Rubber Co.*, 9 F.3d at 832, n.6).

substantial similarity between Lokar's and Gennie Shifter's works.  *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284 (citing *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 832 (10th Cir. 1993)).  Second, as a mixed issue of law and fact, Lokar must prove that the copied elements were protected, *R.W. Beck, Inc.*, 577 F.3d at 1142, as "[t]he mere fact that a work is copyrighted does not mean that every element of the work may be protected."  *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 348 (1991).

Copyright protection is afforded to "original works of authorship fixed in any tangible medium of expression . . .."  17 U.S.C. § 102(a) (2006).  Originality is the *sine qua non* of copyright.  *Feist Publ'ns, Inc.*, 499 U.S. at 345.  In the context of copyright protection, "[o]riginal . . . means only that the work was independently created by the author (as opposed to copied from other works), and that it possesses at least some minimal degree of creativity."  *Id.* This is not a stringent requirement; however, "there remains a narrow category of works in which the creative spark is utterly lacking or so trivial as to be virtually non-existent."  *Mitel, Inc. v. Iqtel, Inc.*, 124 F.3d 1366, 1373 (10th Cir. 1997) (quoting *Feist Publ'ns, Inc.*, 499 U.S. at 359).

Though originality is a necessary element of copyright protection, it is not always sufficient to afford protection.  Copyright protection is unavailable for original works of authorship expressing "any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."  17 U.S.C. § 102(b) (2006).  Commonly expressed as the idea/expression dichotomy, this limitation recognizes that "a copyright does not protect an idea, but only the expression of the idea."  *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1285 (quoting

*Autoskill, Inc. v. Nat'l Educ. Support Sys., Inc.*, 994 F.2d 1476, 1491 (10th Cir. 1993)).

The distinction between an idea and an expression of an idea is somewhat elusive and must be determined on a case-by-case basis. *Id.* In making this determination, "it is important to remember that copyright law seeks to achieve a proper balance between competition based on public ideas and incentive to produce original work." *Id.* (citing *Sony Corp. of Am. v. Universal City Studios, Inc.*, 464 U.S. 417, 429 (1984)). Courts have found that in the grey area where the idea cannot be distinguished from the expression of the idea, "rigorously protecting the expression would confer a monopoly over the idea itself, in contravention of the statutory command." *R.W. Beck, Inc.*, 577 F.3d at 1144-45 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[B][3] at 13-86 (1997)). In such cases, the expression is said to have merged with the underlying idea. *Id.* As the Tenth Circuit has explained:

> The merger doctrine is applied as a prophylactic device to ensure that courts do not unwittingly grant protection to an idea by granting exclusive rights to the only, or one of only a few, means of expressing that idea. If protection were granted to these expressions, it would so increase the cost of creation for others who seek to build on the work that it would impede progress in the arts. Such a result is contrary to the goals of copyright as embedded in the Constitution.

*Gates Rubber Co.*, 9 F.3d at 838 (citations omitted). Similarly, under the related *scenes a faire* doctrine, "expressive elements of a work are not entitled to protection against infringement if they are standard, stock, or common to a topic, or if they necessarily follow from a common theme or setting." *Mitel, Inc.*, 124 F.3d at 1374 (citing *Gates Rubber Co.*, 9 F.3d at 838; *Autoskill, Inc.*, 994 F.2d at 1494). This doctrine "identifies and excludes from protection against infringement expression whose creation 'flowed naturally from considerations external to the author's creativity.'" *Id.* at 1375 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on

Copyright § 13.03[F][3] at 13-131 (1997)).

*The Instructions*

Gennie Shifter and Lokar contest whether the installation instructions for Lokar's Shifter Knob Adapter are sufficiently original to warrant copyright protection.  As Lokar has a registered copyright for its instructions, they are presumed to be validly copyrighted.  *Palladium Music, Inc. v. EatSleepMusic, Inc.*, 398 F.3d 1193, 1196 (10th Cir. 2005) (citing 17 U.S.C. § 410(c)); U.S. Copyright Registration TX 6-564-688 and TX 6-564-689, Lokar's Exhibit A, Doc. 11-2.  Gennie Shifter may overcome this presumption, however, by offering "some evidence or proof to dispute or deny [Lokar's] prima facie case of infringement."  *Id.* (quoting *Entm't Research Group, Inc. v. Genesis Creative Group, Inc.*, 122 F.3d 1211, 1217 (9th Cir. 1997)).

To that end, Gennie Shifter argues that the instructions are a "procedure, process, . . . [or] method of operation" within the meaning of § 102(b) and, as a result, are not protected.  Gennie Shifter further argues that, even if the instructions are "original" within the meaning of copyright law, they are "inseparable from . . . the underlying idea or process of installing a shift knob adapter," and that "[t]he constituent elements of Lokar's installation instructions are standard, stock and common to the topic of auto parts installation."  Gennie Shifter's Response to Lokar's Motion for Summary Judgment of Copyright Infringement, Doc. 60, pp. 9 and 10.  Accordingly, Gennie Shifter asserts that the doctrines of merger and *scenes a faire* bar protection.  Finally, even if Lokar's instructions are found protectable, Gennie Shifter argues that there are sufficient differences between its instructions and Lokar's copyrighted instructions to raise a genuine issue of material fact.

Lokar counters, arguing that the instructions are sufficiently original to warrant copyright

protection as they "describe a new *procedure* for installing a car part" and that "[t]he decision to use certain terms — such as 'outer adapter housing' and 'inner sleeve' — to describe parts or aspects of the product was a creative decision . . .." Lokar's Reply to Gennie Shifter's Response to Lokar's Motion for Summary Judgment of Copyright Infringement, Doc. 62, p. 6 (emphasis added). Further, Lokar points to Gennie Shifter's successful re-writing of its instructions as evidence that there exist multiple ways to express the process such that the doctrines of merger and *scenes a faire* do not bar protection.

In determining the issue of protectability, it is useful to examine the instructions at issue in this case.[6] The instructions read as follows:

|  |  |
|---|---|
| STEP 1: | Using a 9/16 wrench, loosen the jam-nut. Unscrew both the knob and jam-nut and remove them from the shifter lever. (These parts will not be reused in this installation. Save them for future use in changing back to the Lokar knob.) Fig. 1 (For Pre-1995 Shifters, please call Lokar for Shifter Knob Removal Instructions.) |
| STEP 2: | Install the jam-nut from the kit onto the shifter lever; run down to bottom of threads on shifter lever. Fig. 2. |
| STEP 3: | Install the inner sleeve with the two flats facing down; run down until the inner sleeve lightly touches the jam-nut. Back off the inner sleeve so that the small area between the two slots faces the center of the vehicle. (This may change later in order to properly align the knob, see Step 6.) Fig. 3. Spin the jam-nut upward until it touches the inner sleeve and lock these two parts together using two 7/16" wrenches. Lightly coat the inner sleeve with the silicone grease supplied with the kit. |
| STEP 4: | Slide the chromed outer adapter housing over the inner sleeve and jam-nut. Align the two set screw holes with the two slots on the inner sleeve. Without moving the outer adapter housing, install the nylon set screws. (Lightly screw the nylon set screws into the chromed outer adapter housing until they barely touch the back |

---

[6] Though Lokar has valid copyrights for two versions of its instructions, I will focus on the original version. The differences between the instructions do not impact my analysis on the issue of protectability.

wall of the slots on the inner sleeve and stop.)  Be careful not to strip the nylon set screws.  Once they touch, loosen each nylon set screw equally a 1/4 turn at a time until the chromed outer adapter housing slides up and down freely.  Fig. 4.

STEP 5:    With the chromed outer adapter housing fully extended up, install the 3/8-16 x 3/4" socket set screw with the socket end facing up into the top of the chromed outer adapter housing.  Hand tighten until the set screw touches the top of the black inner cable of the shifter and stop.  Fig. 5.

STEP 6:    At this time, check that the thread size on the new shifter knob, to be installed, is 3/8-16.  Install the knob onto the 3/8-16 socket set screw and tighten against the chromed outer adapter housing.  Fig. 6.  If the knob is not oriented in the desired direction, determine how far it needs to be rotated (using the shortest direction) to reach the desired position.  Remove the two nylon set screws from the chromed outer adapter housing and remove the assembled knob and chromed outer adapter housing from the lever.  Loosen the jam-nut and rotate the inner sleeve the predetermined distance and direction.  Repeat Step 4 above.

STEP 7:    With the adapter and new knob installed, the knob can simply be pushed down to select gears.  Fig. 7.  Otherwise, the shifter should operate exactly as it did before the installation of this kit.  Check that all of the lockout positions are functioning properly.  If this is not the case, please verify that the 3/8-16 socket set screw was not tightened to beyond just touching the black inner cable of the shifter in Step 5.

Lokar Shifter Knob Adapter Installation Instructions, Lokar's Exhibit A, Doc. 11-2, pp. 4-5.

Lokar correctly notes that its original description of the installation process may warrant

protection.  *See Gates Rubber Co.*, 9 F.3d at 837 ( "Although processes themselves are not

copyrightable, an author's description of that process, so long as it incorporates some originality,

may be protectable").  These instructions are, however, merely the recitation of the mechanical

steps and parts dictated by the installation process.  As Gennie Shifter notes, the mechanical

nature of the process mandates the order of the steps and the tools which must be used.  Though

Lokar argues that its naming of parts constitutes creative expression, these names merely reflect

the physical reality of the product.  Indeed, these instructions "flow[] naturally from considerations external to the author's creativity."  *Mitel, Inc.*, 124 F.3d at 1375 (quoting 4 Melville B. Nimmer & David Nimmer, Nimmer on Copyright § 13.03[F][3] at 13-131 (1997)).

Lokar's argument notwithstanding, the existence of Gennie Shifter's revised instructions does not defeat the application of the doctrine of *scenes a faire*, as the doctrine does not require that there be only one means of expressing an idea.  Where, as here, the expression necessarily flows from a common them or setting, the doctrine applies to limit Lokar's ability to secure protection for its product design by securing a copyright for the expression of the installation instructions dictated by the installation process.  As a result, I find that the doctrine of *scenes a faire* bars copyright protection for the instructions for installing Lokar's Shifter Knob Adapter.  I need not address whether Gennie Shifter has copied Lokar's instructions.  Summary judgment in Gennie Shifter's favor on Count I of Lokar's counterclaim is appropriate.  To the extent that it involves this issue, Lokar's motion for summary judgment on Gennie Shifter's Fourth Claim for Declaratory Relief is denied.

*The Catalog*

The parties also dispute whether Gennie Shifter has infringed on the portion of Lokar's federally copyrighted catalog describing Lokar's Shifter Knob Adapter.  As with the instructions, Lokar's catalog is presumed to be validly copyrighted as it is federally registered, but Gennie Shifter may overcome this presumption by producing evidence challenging some element of the infringement claim.  U.S. Copyright Registration TX 6-564-744, Lokar's Exhibit C1, Doc. 11-4, p. 2.  Gennie Shifter asserts that Lokar's catalog text is not protectable as it contains "uncreative descriptions of fact as to size . . . and components."  Gennie Shifter's Response to Lokar's

Motion for Summary Judgment of Copyright Infringement, Doc. 60, p. 12.  Apparently distracted by Gennie Shifter's attack on the originality of its installation instructions, Lokar does not address this contention in its Reply to Gennie Shifter's Response.  Despite this oversight, I find that the catalog text contains the required modicum of originality to warrant copyright protection.  In addition to "uncreative descriptions of fact as to size . . . and components," Lokar's catalog text contains text describing its jam nuts as "hidden" and the overall appearance of the product as "clean."  This text reflects the original thought of the author – original thought which "possesses [the] minimal degree of creativity" necessary for a finding of originality in the copyright context.  Having determined the protectability of the language at issue, I must now determine whether Gennie Shifter has copied protectable elements of the catalog text.

Though Lokar has not offered direct evidence that Gennie Shifter copied its catalog text, it may prove copying by showing that Gennie Shifter had access to its catalog text and that there exists substantial similarity between Lokar's protected material and Gennie Shifter's catalog text.  *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1284.  Gennie Shifter admits that it had access to Lokar's website (which contains Lokar's catalog) at all relevant times. Gennie Shifter's Reply in Support of its Motion for Summary Judgment, Doc. 91, pp. 8-9.   Thus, Lokar need only show that there exists a substantial similarity in order to establish infringement.

Recently, this circuit has relied upon the abstraction-filtration-comparison framework to determine whether such substantial similarity exists.[7]  *See, e.g., Country Kids 'N City Slicks,*

---

[7]  This approach is utilized as follows:

First, in order to provide a framework for analysis, a court should dissect the work according to its varying levels of generality as provided in the abstractions test.  Second, poised with this framework, the court should

*Inc.*, 77 F.3d at 1284-85.  This framework, however, is only to be utilized to the extent that it aids the reviewing court in distinguishing protectable elements of a work from those that are unprotectable.  *Mitel, Inc.*, 124 F.3d at 1372.  "[T]he appropriate test to be applied and the order in which its various components are to be applied may vary depending upon the claims involved, the procedural posture of the suit, and the nature of the works at issue."  *Id.* (quoting *Gates Rubber Co.*, 9. F.3d at 834, n. 12) (alterations omitted).  Where, as here, the copying at issue involves a discrete portion of a work, I need not engage in a complete abstraction-filtration-comparison analysis.

The test used to determine whether there is substantial similarity focuses on "whether the accused work is sufficiently similar that an ordinary observer would conclude that the defendant unlawfully appropriated the plaintiff's protectable expression by taking material of substance and value."  *Country Kids 'N City Slicks, Inc.*, 77 F.3d at 1288 (citing *Atari, Inc. v. North Am. Philips Consumer Elecs. Corp.*, 672 F.2d 607, 614 (7th Cir. 1982)).  However, "[o]ne work does not violate the copyright in another simply because there is a similarity between the two if the similarity results from the fact that both works deal with the same subject or have the same common source."  *La Resolana Architects, PA v. Reno, Inc.*, 555 F.3d 1171, 1179 (10th Cir.

_____

> examine each level of abstraction in order to filter out those elements of the work which are unprotectable.  Filtration should eliminate from comparison the unprotectable elements of ideas, processes, facts, public domain information, merger material, *scenes a faire* material, and other unprotectable elements suggested by the particular facts of the program under examination.  Third, the court should then compare the remaining protectable elements with the allegedly infringing work to determine whether the defendants have misappropriated substantial elements of the plaintiff's work.

*Mitel, Inc.*, 124 F.3d at 1371 (quoting *Gates Rubber Co.*, 9 F.3d at 834) (alterations omitted).

14

2009) (quoting *Dorsey v. Old Sur. Life Ins. Co.*, 98 F.2d 872, 873 (10th Cir. 1938)).  The

following text appears on page seven of the Lokar Catalog:

> The Shifter Knob Adapter is designed with the common 3/8-16 and 3/8-24
> threads found in most aftermarket shifter knobs.  Designed with hidden jam nuts
> for a flush mount against the shifter knob.  Chromed finish blends with the Lokar
> chromed shifter lever to give you the desired clean look with a custom knob.

Lokar Catalog, Lokar's Exhibit A-6, Doc. 57-7, p. 10.  The Gennie Shifter catalog contains very

similar language on page four (identical language in italics):

> The Lo-Dapt™ Shifter *Adapter is designed with the common 3/8-16 threads
> found in most aftermarket shift knobs.  Designed with hidden jam nuts for a flush
> mount against the shifter knob.*  Gennie's polished 304 Stainless Steel Lo-Dapt™
> *blends with* any *chromed shifter to give you the desired clean look with* your
> choice of Gennie Shift Knobs.

Gennie Shifter Catalog, Lokar's Exhibit A-8, Doc. 57-11, p. 9.  Of the fifty-two words in the

quoted paragraph, Gennie Shifter uses thirty-nine.  Though some of the copied textual material is

unprotected statement of fact dictated by similar subject matter, much of it is protectable creative

expression.  In light of Gennie Shifter's copying of organization, structure, and diction, I find

that an ordinary observer would conclude that Gennie Shifter unlawfully appropriated Lokar's

protectable expression by taking material of substance and value.  Accordingly, summary

judgment in Lokar's favor may be appropriate on Count II of its counterclaim and, to the extent

it is implicated by my ruling on Count II, on its motion for summary judgment on Gennie

Shifter's Fourth Claim for Declaratory Relief.  However, I withhold judgment on this count

pending resolution of Lokar's Motion to Join Parties and Amend Pleadings (Doc. 63).

## II. Federal and Common Law Trademark Infringement

*(Lokar's Count III, Gennie Shifter's First Claim for Declaratory Relief)*

Both Gennie Shifter and Lokar move for summary judgment on Lokar's claim for federal and common law trademark infringement, and Lokar has moved for summary judgment on Gennie Shifter's claim for declaratory judgment that it has not infringed on Lokar's trademarks.[8] The Lanham Act prohibits, in connection with any good or service, the unauthorized use in commerce of "any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1114(1)(a) (2006).  Section 43 extends this protection to "any word, term, name, symbol, or device" that is "likely to cause confusion"— even unregistered common law marks.  15 U.S.C. § 1125 (a)(1)(A) (2006).

In order to prove that Gennie Shifter has infringed its registered trademark, Lokar must show that:  (1) its mark is registered; (2) Gennie Shifter's use of the mark was unauthorized; and (3) Gennie Shifter's use of the mark is likely to cause confusion in the marketplace.  *Big O Tires, Inc. v. Bigfoot 4x4, Inc.*, 167 F. Supp. 2d 1216, 1222 (D. Colo. 2001) (citing *Durango Herald, Inc. v. Riddle*, 719 F. Supp. 941, 948 (D. Colo. 1988)).  In order to prove infringement of its unregistered common law mark, Lokar must show that:  (1) its mark is protectable; (2) Gennie Shifter used the mark in connection with goods or services; and (3) Gennie Shifter's use of the mark is likely to cause confusion.  *Utah Lighthouse Ministry v. Found. for Apologetic Info. &*

---

[8] My analysis focuses on the parties' competing motions for summary judgment on Count III of Lokar's counterclaim, as resolution of these motions will necessarily resolve Lokar's motion for summary judgment on that part of Gennie Shifter's First Claim for Declaratory Relief involving a declaration of trademark non-infringement.

*Research*, 527 F.3d 1045, 1050 (10th Cir. 2008).

Lokar alleges that Gennie Shifter's use of the word "Lokar" in an advertisement for its Lo-Dapt constitutes infringement of Lokar's federally registered trademarks and its common law trademark, and that its burgeoning use of the syllable "Lo" as a naming convention for its products is likely to enhance confusion.[9] Gennie Shifter counters, arguing that it has not actually used Lokar's federally registered stylized "LOKAR" logo, Lokar's common law "LOKAR" trademark is a descriptive mark owed a lesser degree of protection, and there is no likelihood of confusion stemming from its alleged use of Lokar's marks.

Though I find that Lokar has sufficiently established the first two elements of infringement for both its registered and unregistered marks, I find that both parties have produced evidence raising a genuine issue of material fact whether Gennie Shifter's use of Lokar's marks is likely to cause confusion. Accordingly, summary judgment on the issue of Trademark Infringement is inappropriate.

*Registration and Unauthorized Use of Lokar's Registered Trademark*

Gennie Shifter admits, and the evidence clearly proves, Lokar holds valid, federally registered trademarks for its stylized logo. Gennie Shifter's Response to Lokar's Motion for Summary Judgment of Trademark Infringement and Unfair Competition, Doc. 88, p. 1; U.S.

---

[9] Though Lokar fails to assert any federal trademark infringement claims based on its federally registered LOKAR MOTORSPORTS trademark in its Amended Answer and Counterclaim, it asserts that its common law trademark infringement claim encompasses this trademark. As resolution of this issue does not impact my decision, I decline to decide whether Lokar's claims based on this trademark have been preserved. For purposes of this summary judgment motion, I will only consider Lokar's common law "LOKAR" mark and its federally registered stylized "LOKAR" logo.

Trademark Registration 2,079,242, Lokar's Exhibit A-16, Doc. 64-5.  Though Gennie Shifter contests whether its use of the plain text word "Lokar" in advertisements for the Lo-Dapt constitutes a use of this registered trademark, I find this argument unconvincing.  The argument that Gennie Shifter has not used Lokar's stylized logo because it has not identically reproduced it ignores the text of Section 1114, which prohibits the "reproduction, counterfeit, copy, *or colorable imitation* of a registered mark."  25 U.S.C. § 1114(1)(a) (2006) (emphasis added).  Gennie Shifter's reproduction of the word "Lokar" is a colorable imitation of Lokar's registered marks, as it relays the primary message and content of those marks–the word Lokar.  Gennie Shifter's designation of the plain text  "Lokar" as a trademark in the context of the advertisement further buttresses this conclusion, as it reflects Gennie Shifter's own view that it was using a trademarked word in the advertisement.  *See* Gennie Shifter Catalog, Gennie Shifter's Exhibit 2, Doc. 1-3, p. 3.  For these reasons, it is clear that Gennie Shifter used Lokar's registered trademarks for purposes of this analysis.

*Protectability and Use of Lokar's Common Law Trademark*

It is not contested that Gennie Shifter used the word "Lokar" in the text of its advertisement.  The issue, then, is whether Lokar's unregistered common law mark is protectable.  In order to be protectable, "a mark must be capable of distinguishing the products [or services] it marks from those of others."  *Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004).  The eligibility for protection, and the degree of protection afforded, depend upon the categorization of the mark.  Trademarks can be characterized "in one of five categories of increasing distinctiveness and strength:  (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful."  *Heartsprings, Inc. v. Heartspring, Inc.*, 143 F.3d 550, 555 (10th

Cir. 1998) (citing *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768 (1992)).  These

categories are routinely defined as follows:

> A mark is generic if it is a common description of products or services and refers
> to the genus of which the particular product or service is a species.  A mark is
> descriptive if it describes the product's or service's features, qualities, or
> ingredients in ordinary language or describes the use to which the product or
> service is put.  A mark is suggestive if it merely suggests the features of the
> product or service, requiring the purchaser to use imagination, thought, and
> perception to reach a conclusion as to the nature of the goods or services.  An
> arbitrary mark applies a common word in an unfamiliar way.  A fanciful mark is
> not a real word at all, but is invented for its use as a mark.

*Donchez v. Coors Brewing Co.*, 392 F.3d 1211, 1216 (10th Cir. 2004) (quoting *Lane Capital*

*Mgmt., Inc. v. Lane Capital Mgmt., Inc.*, 192 F.3d 337, 344 (2d Cir. 1999)).

Gennie Shifter argues that "Lokar," as an adaptation of the words "low car," is merely

descriptive of the use to which Lokar's products are put.  A mark is descriptive, however, only if

it immediately "describes the product's [or service's] features, qualities, or ingredients in

*ordinary language* or describes the use to which the product [or service] is put."  *Donchez*, 392

F.3d at 1216 (emphasis added).  The word "Lokar" is not found in any dictionary; it lacks

alternate definition, other than to function as a trademark for Lokar's goods and services.  Lokar

"is not a real word at all, but [was] invented for its use as a mark."  *Id.*   Accordingly, it is a

fanciful mark due the highest degree of protection.

In light of these findings, I must next consider whether Gennie Shifter's use of these

marks is likely to result in confusion.

### *Likelihood of Confusion*

Whether the use of a mark will result in likelihood of confusion within the meaning of

the Lanham Act is a question of fact.  *The John Allan Co. v. The Craig Allen Co., LLC*, 540 F.3d

1133, 1138 (10th Cir. 2008).  The 10th Circuit has enumerated six non-exhaustive factors to be

considered by courts in determining the likelihood of confusion resulting from the use of a

registered mark:

> (1) the degree of similarity between the marks;
> (2) the intent of the alleged infringer in adopting the mark;
> (3) evidence of actual confusion;
> (4) similarity of products and manner of marketing;
> (5) the degree of care likely to be exercised by purchasers; and
> (6) the strength or weakness of the marks.

*Id*. (quoting *Sally Beauty Co. v. Beautyco, Inc.*, 304 F.3d 964, 972 (10th Cir. 2002)).  None of

these factors is dispositive, and "the final determination of likelihood of confusion must be based

on consideration of all relevant factors."  *Id.* (quoting *Heartsprings, Inc.*, 143 F.3d at 554).  The

party seeking to prove infringement bears the burden of establishing a likelihood of confusion.

*Id.* (quoting *Utah Lighthouse Ministry,* 527 F.3d at 1055).  "Although likelihood of confusion is

frequently a fairly disputed issue of fact on which reasonable minds may differ, the issue is

amenable to summary judgment in appropriate cases."  *King of the Mountain Sports, Inc. v.*

*Chrysler Corp.*, 185 F.3d 1084, 1089 (10th Cir. 1999) (quoting *Universal Money Ctrs. v. AT&T*,

22 F.3d 1527, 1530, n.2 (10th Cir. 1994)).

### *1.  The Degree of Similarity Between the Marks*

The degree of similarity between marks is tested on three levels:  sight, sound, and

meaning.  *Sally Beauty Co.*, 304 F.3d at 972 (citing *King of the Mountain Sports, Inc.*, 185 F.3d

at 1889).  In comparing the marks, "similarities are weighed more heavily than differences."  *Id.*

(citing *Beer Nuts, Inc. v. Clover Club Foods Co.*, 805 F.2d 920, 925 (10th Cir. 1986)).  In some cases, "where one feature of a mark [is] more significant than other features . . . it is proper to give greater force and effect to that dominant feature." *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 1570 (Fed. Cir. 1983).  Here the relevant comparison is between Lokar's marks (the federally registered stylized logo, and the common law "Lokar") and Gennie Shifter's contested use ("Lokar-type").  The dominant feature of each of Lokar's marks is the word "Lokar."  The degree of similarity between Gennie Shifter's use of the word "Lokar" in the text of its advertisement and the dominant feature of Lokar's marks is high.  This factor weighs in Lokar's favor.[10]

### 2.  *Gennie Shifter's Intent*

If Gennie Shifter used Lokar's mark with the intent to derive benefit from Lokar's reputation or good will, this weighs heavily in Lokar's favor.  *Heartsprings, Inc.*, 143 F.3d at 556  (citing *Universal Money Ctrs.*, 22 F.3d at 1532).  If, conversely, "the evidence indicates [Gennie Shifter] did not intend to derive benefit from [Lokar's] existing mark, this factor weighs against the likelihood of confusion." *Id.* (citing *First Sav. Bank, F.S.B. v. First Bank Sys.*, 101 F.3d 645, 655 (10th Cir. 1996)).

Lokar argues that, in combination with the expansion of the "Lo" naming convention,

---

[10]  Lokar also argues that the first syllable of its marks, "Lo," is a dominant feature, and that Gennie Shifter's burgeoning use of a "Lo" naming convention is likely to increase the confusion resulting from Gennie Shifter's use of the Lokar marks in its advertisements for the Lo-Dapt.  I find this argument unconvincing.  As Lokar itself has explained, the mark "Lokar" was coined as a play on the words "low car."  In developing the mark, both words depended upon the other for their meaning.  There is no reason to believe that "Lo" is any more dominant than "Kar" in the minds of consumers, and Lokar has not provided any evidence tending to prove the syllable's supposed prominence.

Gennie Shifter's use of the word "Lokar" supports an inference that Gennie Shifter intended to trade on Lokar's goodwill.  "Lokar" offers deposition testimony and circumstantial evidence in support of its argument that Gennie Shifter's expanding use of the "Lo" naming convention was a result of an unnatural obsession with Lokar.  Specifically, Lokar cites the testimony of Robert Nyholm, Gennie Shifter's former National Sales Manager, who testified that Gennie Shifter's President Todd Gold was "obsessed" with Lokar and that he had expanded the "Lo" naming convention in order to irritate Lokar.  Deposition of Robert Roy Nyholm, Lokar's Exhibit A-20, Doc. 64-9, pp. 5; 9-10.

Gennie Shifter counters that its expansion of the "Lo" naming convention was an attempt to capitalize on the goodwill associated with its "Lo-line" handbrake — a product which it claims had been on the market since at least 1983.[11]  In support of this argument, it cites the testimony of its President, Todd Gold, who explicitly denied that the expansion of the "Lo" naming convention had anything to do with Lokar.  Declaration of Todd Gold, Gennie Shifter's Exhibit 12, Doc. 88-13, p. 2.   Resolving this factor would require an assessment of the credibility of this competing testimony — an assessment that is inappropriate at the summary judgment phase.  Accordingly, for purposes of analysis, I have treated this as a neutral factor favoring neither party.

### 3. Evidence of Actual Confusion

Though evidence of actual confusion is not necessary, it is considered to be the best evidence to establish a likelihood of confusion.  *The John Allan Co.*, 540 F.3d at 1140 (quoting

---

[11]  As mentioned above, the parties hotly contest the date when Gennie Shifter first marketed the Lo-Line handbrake.  *See supra* n.2.  This exact date is, however, irrelevant for purposes of my analysis.

*Universal Money Ctrs., Inc.*, 22 F.3d at 1534).  A court may, however, "disregard as *de minimis* isolated instances of actual confusion."  *Id.* (citing *King of the Mountain Sports, Inc.*, 185 F.3d at 1092).

Lokar offers three direct pieces of evidence which it claims to be examples of actual confusion resulting from Gennie Shifter's use of its marks.  First, it cites the fact that a customer, Greg Denk, sent a Gennie Shifter transmission product to Lokar for replacement.  Deposition of Richard M. Craze, Sr., Lokar's Exhibit A-28, Doc. 64-17, p. 5; Declaration of Richard M. Craze, Sr., Lokar's Exhibit A-25, Doc. 64-14, p. 6.  Next, it references the deposition of James Barillaro, a Lokar employee who gave one specific example of customer confusion occurring at a trade show.  Deposition of James Ralph Barillaro III, Lokar's Exhibit A-29, Doc. 64-18, pp. 7-8.  Finally, it offers the submission of a Lokar purchase order containing Gennie Shifter part numbers by Yearwood Speed & Customs.   Declaration of Richard M. Craze, Sr., Lokar's Exhibit A-25, Doc. 64-14, pp. 4, 12.   In addition to this direct evidence, it offers the testimony of its President, Rick Craze, that, based on his conversations with Lokar employees, reports of customer confusion between Lokar and Gennie Shifter recently increased to "approximately three or four telephone calls per week" and that instances of confusion at trade shows had increased as a result of Genie Shifter's expansion of its "Lo" naming convention.   Declaration of Richard M. Craze, Sr., Lokar's Exhibit A-25, Doc. 64-14, pp. 3-4.

Gennie Shifter counters with declarations from Greg Denk, a representative of Yearwood Speed & Customs, and the customer who had placed the order with Yearwood explicitly disclaiming any confusion between Lokar and Gennie Shifter.  Declaration of Greg Denk, Gennie Shifter's Exhibit 5, Doc. 88-6; Declaration of Ric Morris, Gennie Shifter's Exhibit 6,

Doc. 88-7; Declaration of James Vincent Caparratto, Gennie Shifter's Exhibit 7, Doc. 88-8.

Gennie Shifter also offers the declaration of its National Sales Manager and the deposition

testimony of a former General Manager stating that, in their numerous customer interactions,

they had never observed any customer confusing Gennie Shifter's adapter for a Lokar product.

Declaration of Race Ruedisueli, Gennie Shifter's Exhibit 13, Doc. 88-14; Deposition of Robert

Roy Nyholm, Gennie Shifter's Exhibit 4, Doc. 88-5.

Even assuming that Denk and Yearwood were actually confused, Lokar has not produced

any evidence linking their confusion to Gennie Shifter's use of its marks.  Further, assuming

*arguendo* that their confusion (and that of others cited by Lokar) was actually caused by Gennie

Shifter's use of Lokar's marks, I find the limited anecdotal evidence of actual confusion

presented by Lokar to be *de minimis*. *See King of the Mountain Sports, Inc.*, 185 F.3d at 1092

(finding seven examples of actual confusion to be *de minimis*).  Accordingly, this factor weighs

in Gennie Shifter's favor.

### 4.  Similarity of Products and Manner of Marketing

There is a direct correlation between the similarity of products and the manner of

marketing and the likelihood of confusion — "the greater the similarity between the products

and services, the greater the likelihood of confusion."  *Heartsprings, Inc.*, 143 F.3d at 556

(quoting *Universal Money Ctrs., Inc.*, 22 F.3d at 1532).  Gennie Shifter admits that its products

and means of marketing are very similar to Lokar's products and marketing.  Gennie Shifter's

Response to Lokar's Motion for Summary Judgment of Trademark Infringement and Unfair

Competition, Doc. 88, p. 16.  This factor weighs in Lokar's favor.

24

### 5.  Degree of Care Exercised by Consumers

If a high degree of care is exercised by consumers, then the likelihood of confusion is low.  *See Heartsprings, Inc.*, 143 F.3d at 557 (citing *Universal Money Ctrs., Inc.*, 22 F.3d at 1533).  "Buyers typically exercise little care in the selection of inexpensive items that may be purchased on impulse."  *Beer Nuts v. Clover Club Foods Co.*, 711 F.2d 934, 941 (10th Cir. 1983).  The price of the Lo-Dapt is $24.  Lokar argues that, as a result of this low price, customers exercise a low degree of care in making the decision to buy the adapter and as such are more likely to be confused by Gennie Shifter's use of Lokar's marks.  Gennie Shifter counters with declarations that consumers in the hot rod and after market car accessory market exercise great care in making their purchasing decisions.  Declaration of Todd Gold, Gennie Shifter's Exhibit 12, Doc. 88-13; Declaration of Race Ruedisueli, Gennie Shifter's Exhibit 13, Doc. 88-14.  Neither party, however, offers convincing evidence in support of their arguments.  Given the paucity of evidence, this issue is not appropriate for resolution at the summary judgment phase.  Accordingly, in my analysis, this factor favors neither party.

### 6.  Strength or Weakness of the Mark

The stronger the mark, the more likely the encroachment will lead to confusion.  *Sally Beauty Co.*, 304 F.3d at 975.  In assessing the strength of a mark, there are two types of "strength" which must be considered:  conceptual strength and commercial strength.  *King of the Mountain Sports, Inc.*, 185 F.3d at 1093.  As discussed above, Lokar's marks are fanciful marks due the highest degree of protection.  *Protectability and Use of Lokar's Common Law Trademark, supra* pp. 18-19.  Commercial strength depends on the marketplace recognition of the mark.  *King of the Mountain Sports, Inc.*, 185 F.3d at 1093.  As Gennie Shifter's former

25

General Manager testified, "Lokar is a big name in the business.  If you're into hot-rods, you know Lokar."  Deposition of Robert Roy Nyholm, Lokar's Exhibit A-20, Doc. 64-9, p. 3.  I accept this as evidence of the commercial strength of Lokar's "LOKAR" marks.  In light of this perceived strength, and the protection due Lokar's "fanciful" marks, this factor weighs strongly in Lokar's favor.

*Fair Use*

Gennie Shifter asserts that its use of Lokar's marks constitutes nominative fair use and that this is an affirmative defense to any potential infringement.  Under the doctrine of nominative fair use, a trademark may be used for purposes of "comparison, criticism, or point of reference where it would be impossible to do so without using the mark." *Frontrange Solutions USA, Inc. v. Newroad Software, Inc.*, 505 F. Supp. 2d 821, 834 (D. Colo. 2007) (citing *New Kids on the Block v. New America Publ'g, Inc.*, 971 F.2d 302, 306 (9th Cir. 1992)).  Fair use, however, is "not an affirmative defense to trademark infringement but rather goes to . . . proof of the likelihood of confusion element of [a] claim." *Health Grades, Inc. v. Robert Wood Johnson Univ. Hosp., Inc.*, 634 F. Supp. 2d 1226, 1242 (D. Colo. 2009).  Accordingly, though Gennie Shifter's fair use argument may sway the likelihood of confusion analysis, it is not an affirmative defense which would excuse actual infringement.

In order to establish that its use of "Lokar" in its advertisement for the Lo-Dapt constitutes nominative fair use, Gennie Shifter must show that: (1) the Lo-Dapt's compatibility with a push-button Lokar type shifter was only readily identifiable by using Lokar's mark; (2) it only used so much of Lokar's mark as was reasonably necessary to identify the product; and (3) it did nothing that suggested sponsorship or endorsement by Lokar. *Frontrange Solutions USA,*

26

*Inc.*, 505 F. Supp. 2d at 834 (quoting *New Kids on the Block*, 971 F.2d at 308).  Gennie Shifter argues its Lo-Dapt is compatible with Lokar's shifters, and "[t]o reference the Lokar shifter, [it] necessarily had to use the plain text word 'Lokar.'"  Gennie Shifter's Motion for Summary Judgment on Lokar's Counterclaims, Doc. 67, p. 13.  It also argues that its use of the plain text "Lokar" was limited to the extent necessary to describe the product's function.  Finally, Gennie Shifter asserts that its catalog repeatedly and clearly designated Gennie Shifter as the distributor of the catalog, and nothing in the catalog suggests endorsement by Lokar.

Lokar counters, arguing that Gennie Shifter did not use the word "Lokar" for purposes of "comparison, criticism, or point of reference" to only Lokar products, but to all shifters having a push button.  As a result, Lokar asserts that Gennie Shifter's usage of its marks is clearly outside the scope of the fair use doctrines.  Even if the doctrine does apply, Lokar argues that Gennie Shifter could have identified push button shifters without using Lokar's "LOKAR" trademark.  Thus, Lokar asserts that Gennie Shifter has failed to establish the first and second elements of nominative fair use.  It concludes that the only benefit to Gennie Shifter in using Lokar's "LOKAR" trademark is an association with the goodwill which Lokar has invested in its name — a direct negation of the third element.

Gennie Shifter responds by noting that it manufactures three models of its Lo-Dapt product, each of which is designed for a different style shifter.  Accordingly, it argues that it was necessary to use Lokar's "LOKAR" trademark in order to identify the compatibility of its Lo-Dapt I with Lokar type shifters.  This argument is problematic, however.  There is no mention of Gennie Shifter's Lo-Dapt I, II, or III products in the catalog at issue in this case.  In fact, there is only one Lo-Dapt product mentioned in the catalog.  And, further belying Gennie Shifter's

argument, in the FAQ section of the catalog the Lo-Dapt is described as "a stainless steel adapter for your *push button style* shifter."  Gennie Shifter Catalog, Lokar's Exhibit A-8 Part 4.2, Doc. 57-15, p. 5 (emphasis added).  If it were truly necessary to reference Lokar in describing the product, it seems unlikely that Gennie Shifter would describe the product without reference to Lokar in a different section of the same catalog.  Accordingly, Gennie Shifter's use of Lokar's "LOKAR" trademark is not a nominative fair use.

In weighing these factors, I find the determination of whether there existed a likelihood of confusion to be a very close decision.  Though summary judgment is appropriate on the issue of likelihood of confusion in appropriate cases, this is not such a case.  In light of the foregoing analysis, a rational fact-finder could find in favor of either party on this issue — especially given the uncertainty surrounding the "intent" and "degree of care" prongs.  Accordingly, it seems that there exists a genuine issue of material fact such that this issue is not appropriately resolved at summary judgment.  Summary judgment is denied on Count III of Lokar's counterclaim and on Lokar's motion for summary judgment on Gennie Shifter's First Claim for Declaratory Relief to the extent it is implicated by my ruling on Count III.

### III.  Federal and Common Law Unfair Competition
*(Lokar's Count IV, Gennie Shifter's Second Claim for Declaratory Relief)*

Both Lokar and Gennie Shifter move for summary judgment on Lokar's claim for federal and common law unfair competition, and Lokar moves for summary judgment on Gennie Shifter's claim for a declaratory judgment that it has not engaged in federal or common law

unfair competition.[12]  In order to prove either federal or common law unfair competition Lokar

must prove that: (1) its marks are protectable; and (2) Gennie Shifter's use of its marks are likely

to cause confusion.  *See Donchez*, 392 F.3d at 1215.  These factors are identical to the first and

third factors of the trademark infringement analysis.  As discussed above, there exists a genuine

issue of material fact whether Gennie Shifter's use of Lokar's marks is likely to cause confusion.

As a result, summary judgment on Count IV of Lokar's counterclaim and Gennie Shifter's

Second Claim for Declaratory Relief is inappropriate.

### IV.  Federal and Common Law False Advertising
*(Lokar's Count V)*

Gennie Shifter moves for summary judgment on Lokar's claim for federal and common

law false advertising.  Section 1125(a)(1) of the Lanham Act provides a remedy for false or

misleading representation or descriptions of fact in commercial advertising or promotion.  15

U.S.C. § 1125(a)(1) (2006).  Accordingly, in order to prevail on its false advertising claim,

Lokar must demonstrate:

(1)    that [Gennie Shifter] made material false or misleading representations of fact in connection with the commercial advertising or promotion of its product;

(2)    in commerce;

(3)    that are either likely to cause confusion or mistake as to

        (a)    the origin, association or approval of the product with or by another, or

        (b)    the characteristics of the goods or services; and

(4)    injure the plaintiff.

---

[12]  My analysis focuses on the parties' competing motions for summary judgment on Count IV of Lokar's counterclaim, as resolution of these motions will necessarily resolve Lokar's motion for summary judgment on Gennie Shifter's Second Claim for Declaratory Relief.

*Sally Beauty*, 304 F.3d at 980 (quoting *Cottrell, Ltd. v. Biotrol Int'l, Inc.*, 191 F.3d 1248, 1252 (10th Cir. 1999)).  In order to prevail on its motion for summary judgment, Gennie Shifter need only disprove one of these elements.

In its complaint, Lokar alleges that Gennie Shifter, in the marketing of the Lo-Dapt, has engaged in false advertising.  Specifically, Lokar claims that Gennie Shifter's reference to an "annoying rattle" suggests the "presence of an 'annoying rattle' in [Lokar's] 'Shifter Knob Adapter.'"  Amended Answer to Complaint for Declaratory Relief and Counterclaim, Doc. 11, p. 15.  Lokar asserts that this amounts to a materially false or misleading representation by Gennie Shifter that Lokar's product is of an inferior quality.  Lokar also argues that Gennie Shifter's press releases describing this litigation constitute false advertisement and publicity.

*Falsity of Statements*

In its motion for summary judgment on this claim, Gennie Shifter argues that Lokar's argument fails because the statements made in its advertisements are true — not false or misleading.  In order to prove falsity within the meaning of the Lanham Act, Lokar  "may show that the statement was literally false, either on its face or by necessary implication, or that the statement was literally true but likely to mislead or confuse consumers."  *Zoller Labs., LLC v. NBTY, Inc.*, 111 Fed. Appx. 978, 982 (10th Cir. 2004) (quoting *Southland Sod Farms v. Stover Seed Co.*, 108 F.3d 1134, 1139 (9th Cir. 1997)). "A literally false claim is conveyed by necessary implication when, considering the advertisement in its entirety, the audience would recognize the claim as readily as if it had been explicitly stated."  *Id.* at 982-983 (quoting *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 34-35 (1st Cir. 2000)).  "Commercial claims

30

that are implicit, attenuated, or merely suggestive usually cannot fairly be characterized as literally false." *Id.* at 983 (quoting *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1181 (8th Cir. 1998)). "Where the advertisement is literally false, a violation may be established without evidence of consumer deception." *Id.* at 982 (quoting *Scotts Co. v. United Indus. Corp.*, 315 F.3d 264, 273 (4th Cir. 2002)). "If, however, a plaintiff's theory of recovery is premised upon a claim of implied falsehood, a plaintiff must demonstrate, by extrinsic evidence, that the challenged advertisements tend to mislead or confuse consumers." *Id.* (alterations omitted).

In its motion for summary judgment on this claim, Gennie Shifter alleges that both itself and Lokar are aware of a history of customer complaints about audible rattling in Lokar's Shifter Knob Adapter. In support of this assertion, Gennie Shifter cites minutes from a Lokar staff meeting acknowledging that the rattle was a problem, as well as the deposition testimony of both Lokar's owner and president admitting knowledge of customer complaints of rattling in the adapter. Staff Meeting Notes, Aug. 6, 2007, Gennie Shifter's Exhibit 18, Doc. 67-19; Deposition of Van Walls, Gennie Shifter's Exhibit 17, Doc. 67-18, p. 3; Deposition of Richard M. Craze, Sr., Gennie Shifter's Exhibit 15, Doc. 67-16, p. 3. Lokar does not deny the existence of a rattle or its knowledge of customer complaints. Instead, Lokar argues that the problem is a result of improper installation, not faulty construction, and that Gennie Shifter's statement falsely implies the contrary — that the problem is a result of faulty construction. In effect, Lokar is arguing that Gennie Shifter's claim is false by necessary implication.

I find this argument to be too attenuated for any reasonable finder of fact to conclude that Gennie Shifter's statement is false by necessary implication. The statement in question asserts that the quality of Gennie Shifter's construction process leads to "long lasting durability without

any of those annoying rattles."  Gennie Shifter's Product Catalog, Lokar's Exhibit D, Doc. 11-6, p. 2.  Though one could reasonably infer from this statement that annoying rattles are caused by defective construction, this statement does not implicate Lokar in a way that "will necessarily and unavoidably be received by the consumer."  *Zoller Labs., LLC*, 111 Fed. Appx. at 983 (quoting *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 588 (3d Cir. 2002)).

Even if this message were necessarily implied, its supposed falsity is belied by the deposition testimony of former Lokar employee James Barillaro and the above-cited minutes from the Lokar staff meeting which acknowledge that the set screws included with the adapter — even when properly installed — are at least a part of the problem.  Deposition of James Ralph Barillaro III, Gennie Shifter's Exhibit 13, Doc. 67-14, p. 3; Staff Meeting Notes, Aug. 6, 2007, Gennie Shifter's Exhibit 18, Doc. 67-19.   In fact, Lokar subsequently changed its design to address the issue.  Deposition of James Ralph Barillaro III, Gennie Shifter's Exhibit 13, Doc. 67-14, p. 4.  Lokar has not adduced any evidence that the challenged advertisement tends to mislead consumers; it cannot, therefore, claim that Gennie Shifter's statements are impliedly false.  In light of these findings, Lokar has failed to establish a genuine issue of material fact regarding the falsity of Gennie Shifter's claims.

Lokar also argues that Gennie Shifter's press releases contain false and misleading statements concerning the nature of the ongoing lawsuit, and that these statements are designed to further damage Lokar's goodwill.  Specifically, Lokar argues that Gennie Shifter has falsely accused Lokar of instigating the underlying litigation in an effort to unfairly limit Gennie Shifter's ability to compete. Lokar also objects to Gennie Shifter's characterization of Lokar's

claims as "spurious."  These arguments, however, ignore the plain language of the press releases and the nature of the underlying case.  The first press release was entitled "Gennie Shifter, LLC Files Suit Against Lokar, Inc," and the releases merely mention Lokar's *counter-claims*.  A reading of the plain language of these statements reveals no attempt on Gennie Shifter's part to claim that Lokar instigated this lawsuit.  Additionally, the claims Gennie Shifter characterized as "spurious" are the claims which Lokar agreed to dismiss with prejudice.  Stipulated Dismissal with Prejudice, Doc. 16.  Lokar has failed to establish any genuine issue of material fact concerning the literal or implied falsity of these press releases.  Accordingly, summary judgment in favor of Gennie Shifter on Count V of Lokar's counterclaim is appropriate.

## V.  Federal and Common Law Trademark Dilution
*(Lokar's Count VI, Gennie Shifter's First Claim for Declaratory Relief)*

Gennie Shifter has moved for summary judgment on Lokar's claim for federal and common law trademark dilution, and Lokar has moved for summary judgment on Gennie Shifter's claim for a declaratory judgment that it has not engaged in federal or common law trademark dilution.[13]  In its complaint, Lokar alleges that Gennie Shifter's use of the word "Lokar" in advertisements for it's Lo-Dapt constitutes trademark dilution under 15 U.S.C. § 1125(c) (2006) (The Federal Trademark Dilution Act or "FTDA").  The FTDA provides a remedy for the owner of a famous mark against:

> another person who, at any time after the owner's mark has become famous,
> commences use of a mark or trade name in commerce that is likely to cause

---

[13]  My analysis focuses on Gennie Shifter's motion for summary judgment on Count VI of Lokar's counterclaim, as its resolution will necessarily resolve Lokar's motion for summary judgment on Gennie Shifter's First Claim for Declaratory Relief to the extent that it involves trademark dilution.

> dilution by blurring or dilution by tarnishment of the famous mark, regardless of the presence or absence of actual or likely confusion, of competition, or of actual economic injury.

15 U.S.C. § 1125(c)(1) (2006).  Accordingly, in order to prevail on its claim of trademark dilution, Lokar must prove that: (1) it is the owner of a famous, distinctive mark;  (2) Gennie Shifter has used the same or substantially similar mark; (3) and that use is likely to injure the mark's reputation by either blurring the mark's distinctive quality or otherwise tarnishing the mark's image.  See *Id.*  As the burden of proof is on Lokar, Gennie Shifter may prevail by disproving any of these elements.  As I find that Lokar's mark is not "famous" for purposes of the FTDA, summary judgment in Gennie Shifter's favor is appropriate on this claim.

*Ownership of a Famous, Distinctive Mark*

For purposes of the FTDA, "a mark is famous if it is widely recognized by the *general consuming public* of the United States as a designation of source of the goods or services of the mark's owner."  15 U.S.C. § 1125(c)(2)(A) (2006) (emphasis added).  The statute lists the following factors which may be considered in determining whether a mark has achieved sufficient recognition to be considered "famous" for purposes of dilution:

> (i)     The duration, extent, and geographic reach of advertising and publicity of the mark, whether advertised or publicized by the owner or third parties.
>
> (ii)    The amount, volume, and geographic extent of sales of goods or services offered under the mark.
>
> (iii)   The extent of actual recognition of the mark.
>
> (iv)    Whether the mark was registered under the Act of March 3, 1881, or the Act of February 20, 1905, or on the principal register.

*Id.*  Lokar focuses on these factors in arguing that its marks are famous for purposes of the FTDA.  It offers the following facts in support of its claim:

34

1.    It has been using "LOKAR" in connection with its sale of after-market performance automotive accessories since 1983;

2.    It has spent approximately $850,000 to $1,185,000 annually between 2002 and 2006 on advertising and promotion associated with its "LOKAR" mark;

3.    It has sold tens of millions of dollars worth of products using its marks;

4.    It has sold these products through a network of dealers in all fifty states, Canada, Australia, New Zealand, and Japan; and

5.    Lokar owns federally registered trademarks in its stylized logo and "LOKAR MOTORSPORTS."

As evidence of actual recognition, Lokar cites the deposition testimony of Robert Nyholm, Gennie Shifter's former Sales Manager, acknowledging, "If you're into *hot-rods*, you know Lokar." Deposition of Robert Roy Nyholm, Lokar's Exhibit A-20, Doc. 64-9, p. 3 (emphasis added).

Though Lokar's evidence seems to demonstrate that it has achieved a significant degree of fame in the hot rod community, it has not offered any evidence that its fame extends to the "general consuming public." Prior to the enactment of the Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, such niche fame was arguably sufficient for purposes of trademark dilution. *Times Mirror Magazines, Inc. v. Las Vegas Sports News, LLC*, 212 F.3d 157, 164 (3d Cir. 2000) ("A mark that is highly distinctive only to a select class or group of purchasers may be protected from diluting uses directed at that particular class or group"). In 2006, however, the FTDA was amended to include "recogni[tion] by the general consuming public of the United States" in the definition of "famous." Trademark Dilution Revision Act of 2006, Pub. L. No. 109-312, § 2, 120 Stat. 1730, 1730 (2006).

I must give effect to Congress' intent in amending the FTDA. In so doing, I "must assume that the ordinary meaning of the words Congress uses conveys its intent." *United States*

*v. Albert Inv. Co.*, 585 F.3d 1386, 1394 (10th Cir. 2009) (quoting *United Keetoowah Band of Cherokee Indians of Okla. v. U.S. Dep't of Housing and Urban Dev.*, 567 F.3d 1235, 1241 (10th Cir. 2009)). The meaning of the amendment is clear; it limits protection to those marks that have achieved fame in the minds of the general consuming public. This amendment has rendered niche market fame irrelevant for purposes of the FTDA. Accordingly, the niche fame Lokar's marks have achieved is not sufficient to merit protection under the FTDA. As Lokar has not proven its marks have achieved fame in the minds of the general consuming public, summary judgment on this claim in Gennie Shifter's favor is appropriate. Gennie Shifter's motion for summary judgment on Count VI of Lokar's counterclaim is granted. Lokar's motion for summary judgment on Gennie Shifter's First Claim for Declaratory Relief, to the extent it is implicated by my ruling on Count VI, is denied.

### VI.  False Designation of Origin/Trade Dress Infringement
*(Lokar's Count VII, Gennie Shifter's First Claim for Declaratory Relief)*

Gennie Shifter has moved for summary judgment on Lokar's claim for false designation of origin/trade dress infringement, and Lokar has moved for summary judgment on Gennie Shifter's claim for a declaratory judgment that it has not engaged in trade dress infringement.[14] In its complaint, Lokar alleges that Gennie Shifter has infringed on its trade dress based on the similarity of the Lo-Dapt to its own product design. A product's trade dress "is its overall image and appearance, and may include features such as size, shape, color or color combinations,

---

[14] My analysis focuses on Gennie Shifter's motion for summary judgment on Count VII of Lokar's counterclaim, as its resolution will necessarily resolve Lokar's motion for summary judgment on Gennie Shifter's First Claim for Declaratory Relief to the extent that it involves trade dress infringement.

texture, graphics, and even particular sales techniques." *Sally Beauty*, 304 F.3d at 977 (citing

*Two Pesos, Inc.*, 505 U.S. at 764 n.1).   In order to establish trade dress infringement, Lokar must

establish that: (1) its product is visually distinct; (2) there is a likelihood of confusion between

the products; and (3) the design of the product is not functional.   *Gen. Motors Corp. v. Urban*

*Gorilla, LLC*, 500 F.3d 1222, 1227 (10th Cir. 2007) (citing *Sally Beauty*, 304 F.3d at 977).

Gennie Shifter, in contrast, need only disprove any one of these elements in order to prevail on

summary judgment.   As I find that Lokar has failed to produce sufficient evidence to raise a

genuine issue of material fact as to the distinctiveness of its trade dress, summary judgment in

favor of Gennie Shifter on Count VII of Lokar's counterclaim is appropriate.   Lokar's motion for

summary judgment on Gennie Shifter's First Claim for Declaratory Relief, to the extent it

involves trade dress infringement, is denied.

*Distinctiveness*

There are two bases for proving the distinctiveness of a product's trade dress — inherent

distinctiveness and secondary meaning.   The Supreme Court has held that product design is

never inherently distinctive because it serves purposes other than identifying the product.   *Wal-*

*Mart Stores, Inc. v. Samara Bros, Inc.*, 529 U.S. 205, 213 (2000).   Thus, a party asserting trade

dress infringement of a product design must prove that its trade dress has acquired secondary

meaning.   A product design acquires secondary meaning when "its primary significance in the

minds of potential customers is no longer as an indicator of something about the product itself

but as an indicator of its source or brand." *Sally Beauty*, 304 F.3d at 978 (citing *Vornado Air*

*Circulation Systems, Inc. v. Duracraft Corp.*, 58 F.3d 1498, 1502 (10th Cir. 1995)).   Secondary

meaning may be proved either by direct evidence (i.e., consumer testimony or consumer

37

surveys) or indirect evidence (i.e., expenditures, sales, length and manner of use, and exclusivity of use).  *Donchez*, 392 F.3d at 1218 (citing *Flynn v. AK Peters LTD*, 377 F.3d 13, 20 (1st Cir. 2004)).  Such evidence, however, must reveal "that a significant or substantial part of the buying class uses the trade dress to identify a single source."  *Winning Ways, Inc. v. Holloway Sportswear, Inc.*, 913 F. Supp. 1454, 1468 (D. Kan. 1996) (citing J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32.54[2][a] (3d. ed. 1995)).

Lokar produces the Declaration of Ralph Oard, a recently fired employee of a company owned by Gennie Shifter's president, as direct evidence of secondary meaning.  Oard's declaration contains anecdotal evidence of one customer who, based on the Lo-Dapt's appearance, inquired as to whether the Lo-Dapt was actually Lokar's Shifter Knob Adapter Product.  Declaration of Ralph Oard, Lokar's Exhibit A-52, Doc. 87-14, pp. 5-6.  Lokar also cites the declaration of Debra Wall, its Secretary-Treasurer, which asserts that "customers of Lokar have come to know Lokar's hexagonal-tapered shape as being indicative of Lokar's products."  Declaration of Debra L. Walls, Lokar's Exhibit A-50, Doc. 87-12, p. 3.  Lokar offers no other direct or indirect evidence of secondary meaning.

Gennie Shifter argues that Lokar's evidence is insufficient proof of secondary meaning, specifically questioning the credibility of Mr. Oard's declaration.  Gennie Shifter also points to the existence of another automotive products company, Bitchin Products, Inc., which designs and sells an auto part which is visually similar to Lokar's Shifter Knob Adapter.

Gennie Shifter's argument to the contrary, I do not weigh the credibility of Mr. Oard's declaration at the summary judgment phase.  Even considering all evidence in the light most favorable to Lokar, however, it seems apparent that Lokar has failed to produce evidence

sufficient to raise a genuine issue of material fact that its product design has acquired secondary meaning in the minds of "a significant or substantial part of the buying class."  *Winning Ways, Inc.*, 913 F. Supp. at 1468.  Accordingly, it has failed to prove that its design is visually distinct, and it has not met its burden of proving that there exists a cause of action for trade dress infringement.  Summary judgment in favor of Gennie Shifter is appropriate.

### *Conclusion*

For the foregoing reasons, Gennie Shifter's Motion for Summary Judgment on Lokar's Counterclaims (Doc. 68) is granted in part (on Counts I, V, VI, and VII) and denied in part (on Counts III, and IV).  Lokar's Motion for Summary Judgment of Trademark Infringement and Unfair Competition (Doc. 64) is denied.  Lokar's Motion for Summary Judgement of Copyright Infringement (Doc. 57) is denied in part (Count I and Gennie Shifter's Fourth Claim for Declaratory Relief to the extent it is implicated by the ruling on Count I).[15]  Judgment shall be entered in favor of the Gennie Shifter on Counts I, V, VI, and VII of Lokar's counterclaim.

The parties are to be advised that a status conference will be held to determine the most efficient means of resolving this controversy.  Additionally, Lokar's Motion for Leave to Join Parties and Amend Pleadings as it pertains to Counts II, III, IV, VIII, and IX of Lokar's counterclaim as presented in Lokar's proposed Second Amended Answer to Gennie Shifter's Complaint (Doc. 63-2) will be addressed at this status conference.

Dated:  January 12, 2010                          **s/John L. Kane**
                                                  SENIOR U.S. DISTRICT JUDGE

---

[15]  I withhold judgment on Count II of Lokar's counterclaim pending resolution of Lokar's Motion to Join Parties and Amend Pleadings (Doc. 63).